NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD J. PRATOLA,           : | Civil Action No. 05-1722 (FLW) |
|                              : | |
| Petitioner,        : | |
|                              : | |
| v.                           : | **O P I N I O N** |
|                              : | |
| NEW JERSEY STATE PAROLE BD.  : | |
| et al.,,                     : | |
|                              : | |
| Respondents.       : | |

**APPEARANCES:**

    DONALD J. PRATOLA, #666645/598645
    Bayside State Prison
    P.O. Box F-1
    Leesburg, New Jersey  08327
    Petitioner Pro Se

    WALTER C. KOWALSKI, III, Deputy Attorney General
    PETER C. HARVEY, ATTORNEY GENERAL OF NEW JERSEY
    P.O. Box 112
    Trenton, New Jersey  08625-0112
    Attorneys for Respondents

**WOLFSON**, District Judge

    Donald J. Pratola filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a decision of the New Jersey State Parole Board denying release on parole and imposing a 36-month future parole eligibility term.  Respondents filed an Answer, accompanied by certified copies of the record of proceedings, including several documents filed

under seal.  Petitioner filed two discovery motions.  For the reasons expressed below, the Court denies Petitioner's motions, dismisses the Petition, and denies a certificate of appealability.

## I.  BACKGROUND

On May 18, 1981, after a jury convicted Petitioner of murder, felony murder, breaking and entering, attempted robbery, and weapons charges, the Superior Court of New Jersey, Law Division, Essex County, imposed a life sentence for murder and a consecutive term of incarceration of 17 to 20 years.  State v. Pratola, Indictment No. SGJ 2-80 j. of conviction (Law Div. May 18, 1981).  On June 10, 1982, pursuant to a guilty plea, the Law Division, Essex County, sentenced Petitioner on the charge of conspiracy to unlawfully transfer firearms to an 18-month term of incarceration, to run concurrently to the first sentence.  State v. Pratola, Indictment No. SGJ 2-79 j. of conviction (Law Div. June 10, 1982).  Also on June 10, 1982, pursuant to a guilty plea, the Law Division sentenced Petitioner to concurrent four-year terms for conspiracy and five counts of distribution of controlled dangerous substances.  State v. Pratola, Indictment No. SGJ 3-79 j. of conviction (Law Div. June 10, 1982).

Although the date on which Petitioner first became eligible for parole is not clear from the record, a three-member panel of the New Jersey State Parole Board denied parole on December 8, 1999, and imposed an 84-month future eligibility term, after the Appellate Division of the Superior Court of New Jersey ordered the Parole Board to consider Petitioner for parole. At Petitioner's annual parole review on March 31, 2001, two members of the parole board, including the chair, advised Petitioner to stay focused, complete programming and remain charge free, and that he would be considered for a parole date at his next parole review.  On February 22, 2002, the a parole board panel granted Petitioner a 30-day reduction from his 84-month

future eligibility term for exceptional progress.  The Classification Committee at Bayside State Prison placed Petitioner on full minimum custody status on August 13, 2001, and transferred him to a halfway house on June 4, 2002.  Petitioner resided at various halfway houses and worked in the community until December 17, 2002, when, for reasons that are not clear from the record, officials returned Petitioner to prison.[1]

Petitioner's next parole eligibility hearing occurred on February 3, 2003, before parole board members Blaker and Iwasko.  (Transcript of hearing on Feb. 3, 2003, attached to certification of Amber L. Altschul, dated June 1, 2004.)  (Appendix to Answer at Ra 75 to 85.)  After interviewing Petitioner, with particular emphasis on the circumstances of the murder, the panel denied parole based on a finding that a substantial likelihood existed that Petitioner would commit a new crime if released on parole.  The panel referred the case to a three member panel for the establishment of a future eligibility term that may be in excess of administrative guidelines.  The decision gave Petitioner an opportunity to submit a written statement to the three member panel.

Petitioner requested reconsideration in letters dated March 3, 2003, March 20, 2003, and March 29, 2003.  On April 2, 2003, the two member panel considered Petitioner's requests for reconsideration, and affirmed its decision denying parole.  On May 7, 2003, a three member panel of the parole board considered the matter and imposed a 36-month future eligibility term.  The panel recommended that Petitioner seek placement in a halfway house.  Petitioner appealed the two member panel's February 3, 2003, decision denying parole and the three member panel's

---

[1] Nothing in the record indicates that Petitioner was returned to prison as a result of any wrongdoing or misbehavior.

May 7, 2003, determination to establish a 36-month future parole eligibility term to the full board.  On July 30, 2003, the parole board rejected the grounds raised by Petitioner and affirmed the decisions, noting that the New Jersey administrative code did not require the three member panel to conduct a second in-person hearing prior to establishing a 36-month future eligibility date and that the panels had considered Petitioner's extensive program participation.

Petitioner appealed the board's final decision, and in an opinion filed on October 12, 2004, the Superior Court of New Jersey, Appellate Division, affirmed.  See Pratola v. N.J. State Parole Bd., No. A-0304-03T1 slip op. (App. Div. filed Oct. 12, 2004).  On February 16, 2005, the New Jersey Supreme Court denied certification.  See Pratola v. N.J. State Parole Bd., 182 N.J. 629 (2005) (table).

On March 17, 2005, Petitioner executed the § 2254 Petition presently before this Court.  The Clerk received the Petition on March 23, 2005.  The Petition presents five grounds which are set forth below verbatim:

> Ground One:  THE NEW JERSEY STATE PAROLE BOARD VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS WHEN THEY ERRED WHEN USING INACCURATE INFORMATION WHEN CONSIDERING PETITIONER'S PAROLE HEARING OF FEBRUARY 3, 2003, PURSUANT TO LEGISLATIVE LAW UNDER N.J.A.C. 10:71-4(a)(1), (2) AND N.J.A.C. 10:71-4.(2)(1).
>
> Ground Two:  THE NEW JERSEY STATE PAROLE BOARD VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW WHEN THEY FAILED TO CONSIDER THE MENTAL HEALTH REPORTS OF PETITIONER, FROM 1994 TO MARCH 31, 2003, THAT WERE ALL POSITIVE ON PETITIONER AND NEVER CONSIDERED BY THE PAROLE BOARD IN VIOLATION OF THE SPIRIT OF STATE V. CARL CESTARI.

> Ground Three: THE NEW JERSEY STATE PAROLE BOARD VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW WHEN THEY HELD A IN ABSENTIA HEARING BEFORE THE THREE MEMBER PANEL OF THE NEW JERSEY STATE PAROLE BOARD ON MAY 7, 2003, PURSUANT TO THEIR OWN LEGISLATIVE LAW, PURSUANT TO N.J.A.C. 10:71-3.12.
>
> Ground Four: THE NEW JERSEY STATE PAROLE BOARD VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW WHEN THEY RENDERED THEIR DECISION ON FEBRUARY 3, 2003, THAT PETITIONER WOULD COMMIT ANOTHER CRIME IF RELEASED ON PAROLE, AND WAS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD, AND ABUSED IT'S DISCRETION BY THE PAROLE BOARD, PURSUANT TO N.J.S.A. 30:4-123.53(A) AND N.J.S.A. 30:4-123.56(A), SUBD. (C).
>
> Ground Five: THE NEW JERSEY STATE PAROLE BOARD VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW BY PETITIONER SERVING NINE YEARS INTO A SECOND LIFE SENTENCE, WHEN PETITIONER WAS SENTENCED TO ONLY ONE LIFE SENTENCE PURSUANT TO N.J.S.A. 2A:113-4.

(Pet. at 2-3.)

The government filed an Answer, accompanied by a Brief, an Appendix, and a Confidential Appendix (filed under seal) containing Pre-Sentence Reports, psychological evaluations, and confidential correspondence from the Essex County Prosecutor's Office, which opposed Petitioner's release on parole in general terms.

Petitioner thereafter filed two discovery motions. Petitioner asks this Court to order the following discovery: transcripts of the March 31, 2001, annual parole review hearing, and the February 22, 2002, panel proceeding in which the acting chairman of the Parole Board and another board member granted Petitioner's exceptional progress application and reduced his

future eligibility date by 30 days; copies of the numerous letters received by the board which supported Petitioner's parole; copies of all psychological/professional reports regarding Petitioner; and copies of disciplinary reports and other documents in his classification file. Petitioner argues that these documents are necessary in order for him to refute the findings of the board and prove that the decision was arbitrary and capricious.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A district court must give deference to determinations of state courts.  Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).  Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary."  Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002).  Where a federal claim was "adjudicated on the merits" in state court proceedings[2], § 2254 does not permit habeas relief unless adjudication of the claim

---

[2] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir.
(continued...)

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, __, 124 S.Ct. 2140, 2147 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the

---

[2](...continued)
2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. Rompilla, 355 F.3d at 247.

governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  State Law Claims

In Ground One, Petitioner seeks habeas relief on the ground that the Parole Board used inaccurate information in denying parole and imposing a 36-month future parole eligibility term, contrary to New Jersey administrative regulations.  Specifically, Petitioner contends that the parole board was not aware of all the programs which Petitioner had successfully completed; the board was not aware that on March 31, 2001, the former chairman and another board member told Petitioner that he would receive a parole date at his next review; and the board was not aware that Petitioner had not committed any institutional infraction for several years.  In Ground Two, Petitioner argues that the board did not properly consider the numerous positive reports and evaluations prepared by mental health experts and professionals at the halfway house, contrary to New Jersey law.

The problem with Grounds One and Two, however, is that they do not assert a violation of federal law.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."  Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

Although Petitioner asserts that the parole board violated New Jersey law, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985). Moreover, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). As the United States Court of Appeals for the Third Circuit observed in another habeas case challenging a decision of the New Jersey State Parole Board,

> While one might second-guess the Parole Board's decision, and state court's approval of it, it is not the role of the federal courts to do so. Our review, and that of the District Court, is quite distinct from that of the state appellate courts. The Supreme Court has explained that because our review on habeas is collateral, and not supervisory, not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice.

Hunterson v. DiSabato, 308 F.3d 236, 244-45 (3d Cir. 2002) (citations and internal quotation marks omitted). Because Grounds One and Two do not assert a violation of federal law, they are not cognizable under § 2254.

B. Procedural Due Process

In Grounds Three and Five, Petitioner asserts that the parole board violated his right to procedural due process. In Ground Three, Petitioner contends that, although the two member panel interviewed him before denying parole on February 3, 2003, due process required Petitioner's presence when the three member panel established a parole eligibility date and when the full board affirmed the decisions of the panels. In Ground Five, Petitioner contends that the

9

parole board violated due process by denying parole when he completed the minimum term on the life sentence.

The Due Process Clause applies when government action deprives a person of liberty or property. Greenholtz v. Inmate of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Liberty interests protected by the Due Process Clause may arise from the Due Process Clause itself or from the laws of the states. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). A state may also create a liberty interest that is protected by due process. Sandin, 515 U.S. at 483-84; Greenholtz, 442 U.S. at 8-12. An inmate has no liberty interest arising by force of the Due Process Clause itself in being released on parole prior to the expiration of his sentence. Greenholtz, 442 U.S. at 7. Thus, Petitioner is not entitled to habeas relief on Ground Five.

Assuming without deciding that Petitioner has a state-created liberty interest in the expectancy of parole release at the time of eligibility, absent the requisite finding that one of the justifications for deferral exists, see Greenholtz, 442 U.S. at 8-16, the Court finds that Petitioner is not entitled to habeas relief on Ground Three. In Greenholtz, the Supreme Court recognized that Nebraska had created a liberty interest in the expectancy of parole release, but the Court held that Nebraska had provided due process by requiring notice of the parole eligibility hearing, an opportunity for the inmate to appear at the eligibility hearing and present statements and letters on his own behalf, and a statement informing him why parole was denied. Greenholtz, 442 U.S. at 14-16. In this case, the Appellate Division determined that Petitioner "received all the process to which he was due." Pratola v. N.J. State Parole Bd., No. A-0304-03T1 slip op. at 5 (App. Div. Oct. 12, 2004). Given that Petitioner had a parole eligibility hearing before the two member panel and he had the opportunity to present additional evidence to the three member panel and

the full parole board before they ruled, this Court finds that the Appellate Division's adjudication of his due process claim was not contrary to or an unreasonable application of Greenholtz.

C.  Substantive Due Process

In Ground Four, Petitioner asserts that the decision denying parole violated due process because the panel's finding that Petitioner would commit another crime if released on parole was not supported by credible evidence in the record, and was arbitrary and capricious.

The Supreme Court has held that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful governmental actions regardless of the fairness of the procedures used to implement them." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). However, the Supreme Court has made clear that, when an executive action is at issue, only the most egregious, conscience-shocking conduct will be considered arbitrary in the constitutional sense. County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998) ("conduct intended to injure in some way unjustifiable by any government interest is the sort of action most likely to rise to the conscience-shocking level").

The Appellate Division rejected Petitioner's claim as follows:

> The denial of parole and the imposition of the FET were supported by the record and not contrary to law.  We are satisfied that the decision of the Board was neither arbitrary, capricious, nor unreasonable.  Taking into account our limited scope of review, and our obligation to defer to the expertise of the Board . . . , we are unable to conclude that the Board abused its wide discretion.

Pratola v. N.J. State Parole Bd., No. A-0304-03T1 slip op. at 4-5 (App. Div. Oct. 12, 2004).

11

This Court holds that the Appellate Division's adjudication of Petitioner's substantive due process claim was not an unreasonable application of United States Supreme Court precedent.  See Hunterson, 308 F.3d at 247-48.

D.  Discovery Motions

Petitioner filed two motions seeking discovery.  Specifically, he asks this Court to order the parole board to release the following documents to him:  transcripts of the March 31, 2001, annual parole review hearing, and the February 22, 2002, proceeding in which the acting chairman of the Parole Board and another board member granted Petitioner's exceptional progress application and reduced his future eligibility date by 30 days; copies of the 20 to 30 letters received by the board which supported Petitioner's parole; copies of all psychological/professional reports regarding Petitioner; and copies of disciplinary reports and other documents in his classification file.  Petitioner argues that these documents are required in order for him to refute the parole board's decision and prove that the decision was arbitrary and capricious.

Assuming that the documents sought by Petitioner are as he describes, this Court finds that Petitioner is not entitled to discovery of these documents.  "[F]ederal courts, on habeas review, are not to 'second-guess parole boards,' and the requirements of substantive due process are met if there is some basis for the challenged decision."  Hunterson, 308 F.3d at 246 (quoting Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001).  Since the Appellate Division's adjudication of Petitioner's claims was not contrary to, or an unreasonable application of Supreme Court precedent, the production of the requested documents would not have altered the outcome of this proceeding.

E.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court denies Petitioner's motions, dismisses the Petition for a Writ of Habeas Corpus, and denies a certificate of appealability.


      s/Freda L. Wolfson
      **FREDA L. WOLFSON, U.S.D.J.**


DATED:     March 2 , 2006